# Richmond & Danville R. R. Co. *v.* Trousdale & Sons.

| 99 | 389 |
|-----|-----|
| 122 | 154 |

*Action against Railroad Company as Common Carrier.*

1. *Action against foreign railroad company; when properly brought in this State.*—A contract of affreightment with a foreign railroad company, operating a line of its railway in Alabama, by a resident of this State, for the transportation of freight from his place of residence to another State, is an Alabama contract, and an action for its breach can be brought here.

2. *Action for breach of contract of affreightment; burden of proof.*—If, in an action to recover damages for the breach of a contract of affreightment, whereby the defendant undertook to promptly and safely transport certain live stock, it is shown that the defendant failed to deliver such stock in a safe condition, within a reasonable time, a presumption of negligence arises, and the *onus* is upon the defendant to excuse itself from negligence.

3. *Same; measure of damages.*—In an action to recover damages for the breach of a contract of affreightment, whereby the defendant undertook to promptly and safely transport certain live stock, the measure of damages is the difference in the market value of said stock at the place of consignment, if they had been delivered without any delay, and their market value after their delivery at such place, in the condition they were shown to be by the evidence.

4. *Charge to the jury; does not assume negligence.*—An instruction to the jury that, if a carrier, having undertaken to deliver live stock, failed to deliver it in a safe condition within a reasonable time, a presumption of negligence arises, and the burden of proof is shifted to the defendant to excuse itself from negligence, is not erroneous, as assuming that the stock was shipped in a safe condition, and injured during transportation.

5. *Same.*—In an action against a common carrier for injury to live stock, alleged to have been caused by unreasonable delay in transporting the same, an instruction that, if the jury believe from the evidence the plaintiff is entitled to recover, the measure of damage is the difference in the market value of the stock, if they had been delivered without delay, and their maket value after their delivery, in the condition the evidence shows they were in, is not erroneous as assuming that the stock was injured in transportation.

6. *Common carrier; liability for all damage referrible to negligent delay in transportation.*—A common carrier, guilty of negligent delay in the transportation of live stock, is liable for all damages resulting from the effect of such delay upon the physical condition of the stock, or from their viciousness aroused by the unnecessary confinement incident thereto.

7. *Charge to the jury; nominal damages.*—In an action for damages caused by negligent delay in transporting freight, a charge to the jury that seeks to limit the plaintiff's recovery to nominal damages, on the theory that by ordinary prudence the injury complained of could have been repaired, is affirmatively bad, if, for aught that is hypothesized in said charge, the plaintiff might have been put to great trouble and expense in repairing the injury to his property caused by defendant's negligence.

8. *Same; not disregarding testimony.*—In an action for injury to live stock, caused by delay in transporting the same, an instruction "that the evidence is undisputed that a reasonable time for the delivery of said animals, after the delivery of the same to the railroad company, is ten or twelve hours," is not open to the objection that it disregards the testimony adduced in the case, that "usually stock in shipping go through very nicely in ten, fifteen or twenty hours;" the tendency of this evidence being merely to show that the stock would not be injured on a journey lasting from ten to twenty hours.

9. *Evidence of custom; when not relevant.*—In an action against a common carrier for injury to stock caused by delay in transporting them, evidence as to "what was the custom in such cases as to some one going along with the stock," is irrelevant.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JOHN B. TALLY.

This was an action brought by the appellee, a corporation, against the appellant, a foreign corporation; and sought to recover damages for the failure to deliver within a reasonable time certain live stock, and for injury to such live stock, which were delivered by the plaintiff to the defendant, as a common carrier, to be transported from Birmingham, Alabama, to Atlanta, Georgia.

This suit was commenced on January 1, 1890, and the summons and complaint were served on January 16, 1891, by leaving a copy thereof "with C. P. Hammond, superintendent of the Richmond & Danville Railroad Company, the defendant." On March 17, 1891, the defendant demurred to the complaint on the grounds, *first*, that it shows that the plaintiff is a corporation, and fails to aver whether the plaintiff is a domestic or foreign corporation; and *second*,

because it fails to show that the plaintiff is authorized by its charter to make and enter into a contract of carriage of live stock, which is the foundation of this suit. This demurrer being overruled by the court, the defendant, on February 1, 1892, interposed a special plea to the cause of action, on the ground that the court had no jurisdiction to hear and determine the case, because the defendant "is a foreign corporation incorporated under the laws of the State of Virginia ; that the contract of delivery of the horses and mules, described in the complaint, was made in Alabama, to be partly performed in Alabama and partly in Georgia ; and that the said contract was to be consummated in the State of Georgia by delivery within a reasonable time of said horses and mules at Atlanta, in the State of Georgia." Plaintiff moved the court to strike said special plea to the jurisdiction of the court from the file on the following grounds :  1st. Because the said plea was not interposed at the first term of the court after the bringing of said suit ; 2d, because it is shown by the indorsement of the clerk that the said plea was not filed within the time allowed for pleading, and comes to late; and 3d, because the defendant, by filing its demurrer to the complaint, submitted to the jurisdiction of the court.  The court granted this motion to strike the special plea from the file, to which ruling defendant duly excepted; and issue was then joined on the pleas of the general issue and contributory negligence.  The facts of the case, as shown by the bill of exceptions, are sufficiently stated in the opinion.

One A. J. Camp was introduced as a witness for the plaintiff, and after he had testified that at the time the bill of lading, which was signed by him, was given to the plaintiff, he was the agent of the defendant in Birmingham, the defendant's counsel asked him the following question : "What was the custom in such cases as to some one going along with the stock?"  The plaintiff objected to this question as being irrelevant, which objection was sustained by the court, and the defendant duly excepted to this ruling. There were several other exceptions reserved to the rulings of the court upon the evidence, but the opinion renders it unnecessary to notice them in detail.

Among the written charges requested by the plaintiff was the following :  (6.)  "The jury are charged that the evidence is undisputed that a reasonable time for the delivery of said animals, after the delivery of same to the railroad is ten or twelve hours, and if their being kept on the car for a longer time by the defendant caused them to be vicious and to in-

jure one another, the defendant is liable to answer in damage for such injury." The defendant duly excepted to the giving of this charge. The defendant then requested the court to give, among others, the following written charges, and separately excepted to the refusal to give each of them :

(1.) "The common law rule was that a common carrier was an insurer of goods entrusted to it for carriage; and that if such goods were lost, destroyed or injured, the burden of proof was on the carrier in an action for the damages to acquit itself of negligence, or to show that the loss or injury was caused by the act of God, or the public enemy; but that rule does not apply in this case, because the articles are live stock, which by their nature, are susceptible to injury during the transportation; and in such a case the common carrier is not liable, except for actual negligence causing or contributing to the injury complained of; which negligence must be shown by actual proof in the case." (4.) "If the jury believe from the evidence that the only injury sustained by the animals was such as animals usually sustain when undergoing transportation on railroads, they can find only nominal damages, that is to say some small amount, as one dollar, or one cent." (12.) "The burden of proof is on the plaintiff to show that its animals were injured through the defendant's negligence, and this burden is not shifted by proof that the defendant failed to deliver them within a reasonable time and that they were in an injured condition, because, by their very nature, such animals are liable to injury during transportation in a railroad car." (16.) "The measure of damages in this case is not the difference between the market value in Atlanta of the animals, immediately upon their arrival there, and their probable market value had they promptly arrived there, without injury. It is the duty of every person who has sustained injury to his property to use every reasonable effort to repair the injury; and the jury should consider whether or not the plaintiff could reasonably have repaired the injury to his stock after their arrival in Atlanta, by such remedies as due skill would have suggested to a man of ordinary prudence in his situation; and if you find from the evidence that by the due use of such skill such injury could have been repaired, and the market value of the animals thereby become restored, your verdict can not be for more than nominal damages."

There was judgment for plaintiff, and defendant appeals, and assigns as error the several rulings of the trial court

[Richmond & Danville R. R. Co. v. Trousdale & Sons.]

upon the pleadings, evidence and on the charges given and refused.

JAMES WEATHERLY, for appellant.—(1.) The motion to strike the defendant's special plea from the file was improperly sustained.—*Railroad Co. v. Carr*, 76 Ala. 388; *Railroad Co. v. Chumley*, 92 Ala. 317; 12 Amer. & Eng. Encyc. of Law, 305; subdiv. C. (2.) The charge of the court as to the burden of proof was erroneous.—3 Amer. & Eng. Encyc. of Law, p. 16, title, Carriers of Live Stock, and authorities cited in note 3 ; *Saragossa*, 3d Woods C. C. Rep. 380. (3.) The charges requested by the defendant should have been given.—*Railroad Co. v. Henlein*, 52 Ala. 606; *Railroad Co. v. Harwell*, 91 Ala. 342; 3 Amer. & Eng. Encyc. of Law, pp. 2, 6, note 3.

GREGG & THORNTON, *contra.*—(1.) Plea to the jurisdiction of the court should have been filed at the first term of the court after the suit was brought.—*Beck v. Glenn*, 69 Ala. 121; 12 Rule of practice in Circuit Court, Code of Ala. p. 808. (2.) The court had jurisdiction of the cause of action, and the suit was properly brought in this State.—*A. G. S. R. R. Co. v. Thomas*, 89 Ala. 294, 303. (3.) The question asked the witness Camp called for irrelevant evidence.—*S. & N. R. R. Co. v. Henlein*, 52 Ala. 606 ; *E. Tenn. Va. & Ga. R. R. Co. v. Johnson*, 75 Ala. 596. (4.) The charges given by the court were without error.—*S. & N. R. R. Co. v. Henlein*, 52 Ala. 606 ; *East Tenn. Va. & Ga. R. R. Co. v. Johnson*, 75 Ala, 596 ; *A. G. S. R. R. Co. v. Little*, 71 Ala. 611. (5.) The court properly refused to give charge number 4 asked by the defendant.—*S. & N. R. R. Co. v. Wood*, 71 Ala. 215 ; *Alexander v. Alexander*, 71 Ala. 295 ; 3 Brick. Dig. p. 113, §§ 106, 109.

McCLELLAN, J.—This action is prosecuted by Trousdale & Sons, a domestic corporation, against the Richmond & Danville Railroad Company, a foreign corporation. It sounds in damages for the breach of a contract of affreightment, whereby the defendant undertook to promptly and safely transport certain live stock from Birmingham, Alabama, to Atlanta, Georgia, and there deliver them to the plaintiff which was both consignor and consignee. The contract was made in Birmingham, Alabama, where the plaintiff was domiciled and where the defendant was present by its agents, and whence it operated a line of railway to Atlanta, Georgia, great part of which was in

Alabama, and over which the transportation was to be effected. This was, therefore, an Alabama contract, not only made here, but in part to be performed here ; and the courts of this State clearly, we think, have jurisdiction, service being had, of this action for its breach, notwithstanding the defendant is a foreign corporation, and its full discharge was to be consummated by delivery to the consignee in another State. See *Central Railroad & Banking Company of Georgia v. Carr*, 76 Ala. 388, s. c. 52 Am. Rep. 339.

The evidence tended to show that the animals when delivered in Atlanta, from thirty-four to thirty-six hours after they should have been delivered—a reasonable time for transportation and delivery being put at from ten to twelve hours, and the time required in this instance at forty-six hours—"had been down and were skinned up," that they "looked very thin, hollow, skinned and scalded from standing in the car," "seemed to be feverish," "one lame in hind legs and limping," one specially valuable horse "was sore and lame and appeared to have no life," twelve others "all sore and lame and skinned," &c., &c.; that all the stock were in excellent condition when shipped from Birmingham, and that the bad condition in which they were on arrival at Atlanta was due to the fact that they were kept on the cars a very much longer time than was necessary for their transportation and delivery, without water or food. On the other hand there was evidence tending to show that the animals, or some of them, were not in a sound condition when they were received for shipment, and that the diseases and hurts they exhibited on delivery in Atlanta existed, or had been sustained, before they were shipped and did not result from their transportation at all. It is insisted that the trial court assumed or declared the falsity of the evidence last referred to, or that in effect it was withdrawn from the consideration of the jury by the instructions given. We think not. The charges supposed to have this infirmity are as follows: "If the defendant, having undertaken to deliver the stock, failed to deliver it in a safe condition, within a reasonable time, the presumption of negligence arises, and the burden of proof is shifted to the defendant, to excuse itself from negligence ;" and again : "If the jury believe from the evidence that the plaintiff is entitled to recover, the measure of the damage is the difference in the market value of the stock in Atlanta, Ga., if they had been delivered without any delay in shipment or delivery, and their market value after their delivery in Atlanta, Ga., in the condition the evidence shows

they were in." The first charge quoted we understand to mean only this: that if there has been unreasonable delay on the part of the defendant in the transportation and delivery of the live stock and when, after such unreasonable delay, they are found to be in an unsound condition, the *onus* is then on the defendant to show that the unsound condition of the stock was not due to the unreasonable delay in transportation; or, in other words, that evidence of unreasonable delay and the existence of injuries on delivery raises a *prima facie* presumption that the delay was negligent and the injuries resulted from it, and puts it on the defendant to rebut this presumption, and show either that there was no negligent delay, (which was not attempted to be shown in this case) or, conceding the delay, that the injuries did ńot result from it, but (as was attempted to be done in this case) that the stock was in an unsound condition—had received the injuries complained of—before the shipment. This we understand to be the law, especially where, as in this case, the contract of affreightment sets forth that the stock when received was "in outward apparent good order," and the injuries counted on and shown in the testimony were "outward and apparent." This charge does not assume that the defendant has not discharged this burden, nor does it take away from the jury, or tend to mislead them to forego, the right to find on the whole evidence that the stock was unsound when it came to the hands of the carrier. And so with the other charge quoted which was given at the request of the plaintiff. It does not assume that the stock was injured in the transportation, but asserts only that, if the jury should find negligent delay—as to which there was no controversy—in the transportation and delivery, the measure of plaintiff's recovery would be the difference in value of the animals at the time they should have been delivered in the condition they would have been at that time, and their value when they were delivered in the condition they were at that time. This did not tend to prevent the jury to find that their injuries were not caused by the delay but existed before the carriage began, and hence that their condition was the same when they were delivered as when they should have been delivered. The instruction in effect was that, if the jury found any damages at all for plaintiff, it should be measured by the change in the condition of the live stock wrought by the unreasonable delay, if such change had been wrought.

It may be true that railroad transportation of live stock always and inevitably involves reduction in their weight,

some lameness and even abnormal weakness ; but that this is true and that these effects, incident to the nature of the subject-matter and the manner of transportation, can not be made the basis of a recovery in damages where there has been no negligence on the part of the carrier contributing .thereto or aggravating the natural injuries resulting from car wear and necessary deprivation of water and food, is not to say that, where the carrier has been guilty of negli-delay and subjected the stock to the injurious effects of such transportation for an unreasonable and unnecessary length of time, and in consequence thereof the stock has been in-jured, though only in this natural way, to a greater extent than would have been the case had the delay not occurred, the carrier would not be responsible for whatever increased damage the stock has sustained on account of the delay, though such damage may be purely incident to keeping the animals on the car. To the contrary, we do not doubt the liability of the carrier for all damage that is referrible to a negligent prolongation of the transportation through its natural effect upon the physical condition or latent vicious propensities of the animals, whereby they are reduced in weight or strength more than they would have been had prompt carriage and delivery been made, and injure each other in consequence of viciousness, aroused by the excess of their confinement beyond the time necessary for transpor-tation and delivery. These views will suffice to show the grounds of our opinion, that the trial court did not err in its .rulings on charges having reference to this part of the case. The charges asked by the defendant were faulty in that they involved a tendency to mislead the jury, if indeed that was not their direct effect, from a consideration of any injuries which resulted to the stock from their nature, habits and propensities *in connection with and as operated upon* by the negligent delay of the carrier. Charge 6 given for plaintiff correctly asserted the law in this connection. Charges 1, 12 and 4 refused to defendant were open to the objection pointed out above, if not to others also.

Charge 16 asked by defendant is in a sense abstract—there was no evidence that plaintiff was remiss in its efforts to repair the injuries sustained by the stock, if any, or that such injuries might have been lessened or cured by proper attention which was not given—and was affimatively bad in that it limits the recovery to nominal damages, though, for aught that is hypothesized, the plaintiff might well have been put to great trouble and expense in repairing the in-

[Stringer v. Alabama Mineral R. R. Co. et al.]

jury which his property had sustained through defendant's negligence,

Charge 6 above referred to is not open to the objection urged in argument which proceeds on the idea that there was evidence that twenty-hours, or any number beyond ten or twelve, would be a reasonable time for the transportation from Birmingham to Atlanta. A witness for plaintiff testified that "usually stock in shipping go through very nicely in ten, fifteen or twenty hours," but this evidence went to show that stock would not be injured on a journey lasting from ten to twenty hours on cars, and not that it was reasonably necessary for any length of time beyond ten or twelve hours to be consumed in the transportation from Birmingham to Atlanta.

We cannot see that the court committed any error in sustaining plaintiff's objection to the question put by defendant to the witness Camp. The form of the question was enough to support the objection, and besides the fact sought to be elicited was not relevant. If there was a custom for shippers of stock to accompany it, *non constat* but that this was a mere privilege and not a duty of the shipper; and if the duty of the shipper in this instance, it does not appear that its performance would have avoided the injury, or that its remission contributed thereto.

The other exceptions to rulings on testimony are not urged in argument.

The judgment of the Circuit Court is affirmed.

